IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:18-cr-00210-RBJ

UNITED STATES OF AMERICA,

v.

ERIC WILLIAM CARLSON,

      Defendant.

---

# FINDINGS, CONCLUSIONS AND ORDER

---

      This case was tried to the Court on July 5, 2018. At the conclusion of the trial the parties requested an opportunity to submit post-trial briefs. The briefs have been received and considered.

## FINDINGS OF FACT

      1.      On February 13, 2018 Dr. Carlson[1] completed ATF Form 4473 in order to purchase two shotguns at Stop Drop & Shop, a licensed firearms dealer located at 3952 N. Academy Blvd., Colorado Springs, CO 80917.

      2.      Section A, question 11.b. of ATF Form 4473 asks, "Are you under indictment or information in any court for a felony, or any other crime for which the judge could imprison you for more than one year? (*See Instructions for Question 11.b.*)." Dr. Carlson checked the box "No."

      3.      The second page of ATF Form 4473 contains a certification that reads in pertinent part as follows:

---

[1] Eric Carlson is a Doctor of Chiropractic.

> **I certify that my answers in Section A are true, correct and complete. I have read and understand the Notices, Instructions, and Definitions on ATF Form 4473. . . .** *I understand that a person who answers "yes" to any of the questions 11.b. through 11.l. . . . is prohibited from purchasing or receiving a firearm..* **. . . I also understand that making a false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony under Federal law, and may also violate State and/or local law.** (bolding in original, italics added).

4. The employee who dealt with Dr. Carlson on February 13, 2018, John Foster, testified that he told Dr. Carlson, as is his routine practice, to read and fill out the first page of ATF Form 4473, then flip the page over and read the top portion on the second page (the certification quoted in part above), and then sign the form.

5. Dr. Carlson testified that he did not read the certification language before he signed and dated the form, but he had read that language in the past. Oddly, Dr. Carlson dated his signature 3/13/17 and then corrected the date to say 3/18/18. Gov't Ex. 2. The actual date was 2/13/18. He did not explain the error in the date, and Mr. Foster testified that he didn't notice it. Dr. Carlson also abbreviated Colorado Springs as "Colo Spgs" rather than spelling it out or using a U.S. Postal abbreviation, but he corrected that mistake.

6. At the time Dr. Carlson was in fact under indictment for a felony. Specifically, in *United States v. Thomas Forster Gehrmann, Jr. and Eric William Carlson,* Case No. 15-cr-00303-RBJ, pending in this district before this judge, Dr. Carlson was under indictment for one count of Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371 (Count 1), and three counts of Willfully Subscribing a Tax Return Containing Falsities and Causing Acts to be Done in violation of 26 U.S.C. § 7206(1) and 18 U.S.C. § 2 respectively (Counts 5, 6 and 7).

7. In 15-cr-00303-RBJ this Court had issued an order on March 4, 2016 suppressing certain evidence that the United States planned to use against Dr. Gehrmann and Dr. Carlson.

That suppression order was appealed, and while the interlocutory appeal was pending, the case had remained largely inactive in the district court.

8. Notwithstanding the inactive status of the 2015 case due to the then-pending appeal, Dr. Carlson acknowledged during the hearing in the present case that he remained aware of the indictment on February 13, 2018.[2] However he testified that the indictment was not in his mind at the time. He also testified that he looked at question 11.b, saw the word "felony" in bold letters, and then answered "no" because he had not been convicted.

9. Dr. Carlson was under Pretrial Services supervision in case number 15-cr-00303-RBJ in February 2018. He testified that he told the Pretrial Services officer that he possessed firearms but no restriction was imposed.

10. During the trial in the present case, Dr. Carlson testified that he purchased the two shotguns to fulfill Christmas presents that he had given each of his two sons-in-law. He presented photographs of the shotguns at the time because, according to him, he didn't have the money to make the purchases yet. Both sons-in-law confirmed at trial that they had been given gifts of the shotguns for Christmas 2017, and that the Carlson family had a significant interest in hunting and firearms.

11. Both sons-in-law were eligible to purchase a shotgun and could have gone to the firearms dealer, picked up the shotguns, and completed ATF Form 4473's themselves had Dr. Carlson not decided to do so himself.

12. Dr. Carlson testified that he is an avid hunter who has purchased firearms and filled out the ATF Form 4473 "at least a dozen times" in the past. Def. Ex. D. is a copy of a previous version of ATF Form 4473 that Dr. Carlson completed when he purchased a shotgun on

---

[2] The Tenth Circuit issued an order reversing the suppression decision on April 24, 2018. ECF No. 117. The mandate was issued on June 6, 2018. ECF No. 118.

August 8, 2014 at the same dealer. He correctly answered "no" to question 11.b. on that form. He testified that he filled out the form on February 13, 2018 the same way he previously had without thinking about the answer to question 11.b.

13. Dr. Carlson corresponded by text message with the owner of the dealership, Justin Green, both before and after the attempted purchase. Before the purchase Dr. Carlson asked Mr. Green whether he could purchase the shotguns for the sons-in-law or would they need to come in with him. Def. Ex. A at 2. Mr. Green (who apparently was unaware of Dr. Carlson's pending indictment) answered, "You can gift them no problem." *Id.* After the Colorado Bureau of Investigation's rejection of his attempt to purchase the guns Dr. Carlson texted Mr. Green that his attorney was planning to contact ATF, and that he was not under any restrictions due to the indictment. Def. Ex. B at 1. Mr. Green testified that he knew Dr. Carlson as a customer and as an acquaintance, and that he had seen him socially once or twice.

14. The entire transaction was captured on video (no audio) on the dealer's video monitoring system. Gov't Exs. 3 and 4. My interpretation of the video is that Dr. Carlson did not fill out the form hurriedly. Rather, I find that he took his time, appeared to study the form, and answered the questions.

15. A copy of the form was sent to the Colorado Bureau of Investigation (CBI) for confirmation of Dr. Carlson's eligibility to purchase a firearm while he waited at the dealership. This is a routine practice of the dealership. The CBI rejected the application without providing any reason.

16. Mr. Foster speculated that the reason might have been that Dr. Carlson has a common name and he did not provide his Social Security number on the form, even though the form makes clear that the Social Security number is optional.

17. On the same date, while still at the firearm dealership, Dr. Carlson appealed the denial of his application to purchase the shotguns. Def. Ex. C. He testified that he did not go back over the application before he decided to appeal. He says that he was unaware that he had made a false statement on the form, and he did not suspect that the denial was related to Question 11.b. However, he admitted that he assumed that it was because of the indictment. That was the only reason he could think of. He testified that the denial of the application was the point where he first began to realize that just because he could possess firearms did not mean he could buy them.

18. To the best of the Court's knowledge the appeal was unsuccessful, due to the pending indictment in the 2015 case.

19. On May 2, 2018 Eric William Carlson was indicted for making a false statement during the purchase of a firearm, in violation of 18 U.S.C. § 922(a)(6).

**CONCLUSIONS**

Section 922(a)(6) of Title 18 provides in pertinent part that it is unlawful:

> for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a…licensed dealer…*knowingly* to make any false or fictitious oral or written statement…*intended or likely to deceive such…dealer*…with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

(emphasis added).

Most of the basic facts in this case are undisputed. Dr. Carlson was under indictment for a felony on February 13, 2018. He knew that. Nevertheless, when he attempted to purchase two shotguns he answered a question on the form provided by the firearms dealer which asked whether he was under indictment for a felony "No." He did that notwithstanding that the same form, in bold letters had a passage that specifically had been called to his attention by the dealer,

which warned him that a false statement on the form is a crime punishable as a felony. The dispute is whether Dr. Carlson "knowingly" made a false statement which was "intended" to deceive or was "likely to deceive" the dealer. 18 U.S.C. § 922(a)(6).

The parties dispute the meaning of the term "knowingly" as used in 18 U.S.C. § 922(a)(6). The government cites *United States v. Squires,* 440 F.2d 859 (2d Cir. 1971). The court held that "[w]hen knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence, unless he actually believes that it does not exist." *Id.* at 863. That much of the *Squires* holding is not particularly helpful. But the court went on to hold, "whenever a defense of ignorance of the law or of ignorance of fact is claimed, it is recognized that one may not deliberately close his eyes to what otherwise would have been obvious to him." *Id.* at 864.

The defendant argues that a "deliberate indifference" standard goes against the grain of various Tenth Circuit cases. Post-trial Brief, ECF No. 32, at 2-5. Rather, defendant argues, the Court should use the generic definition of "knowingly" from the Tenth Circuit's pattern jury instructions, i.e.,

> that the act was done voluntarily and intentionally, and not because of mistake or accident. Although knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact. Knowledge can be inferred if the defendant was aware of a high probability of the existence of [the fact in question], unless the defendant did not actually believe [the fact in question].

Tenth Circuit Pattern Criminal Jury Instruction § 1.37 (2018 ed.).

I conclude that my decision in the present case is the same regardless which of those concepts of "knowingly" is used. Indeed, I am not convinced that there is much, if any, substantive difference between them.

6

There is evidence in this case that cuts both ways on the knowingly/deliberate indifference scale. On the one hand, Dr. Carlson, an educated and intelligent man, is plainly able to read and understand forms such as the ATF Form 4473. Indeed, he is quite familiar with the form, having completed it numerous times in the past. Question 11.b., like other questions on page one of the form, is neither obscure nor ambiguous. It asked in plain English whether Dr. Carlson was under indictment for a felony.

After taking his time to read and answer the questions, which is evident from the video, he falsely answered "no." The inference that Dr. Carlson read the questions before answering them draws further support from the fact that he did not just check "no" across the board but, instead answered "yes" to question 11.a. ("Are you the actual transferee buyer of the firearm(s) listed on this form?"). In addition, on page two of the form, in a bolded paragraph that was specifically called to his attention by the dealer, he was informed that a person who answered "yes" to any part of Question 11 except 11.a. was prohibited from purchasing a firearm.

His explanations and excuses, i.e., that (1) the indictment was not in his mind at the time he answered Question 11.b.; (2) he saw the word "felony" and checked "no" because he had not been convicted; and (3) he did not bother to read the bolded certification language on page two notwithstanding his signature immediately beneath it are flimsy. It is hard to conceive that a professional man who has been indicted for a felony for the first time in his life would forget about it, even momentarily. Dr. Carlson admitted that when his application was denied the only reason he could think of was that it was because of the indictment. It does not make sense that Dr. Carlson would not carefully read any question containing a reference to a "felony." Nor, as the government points out, does the notion that he saw the word "felony" and answered "no" because he hadn't been convicted make much sense when the very next question, 11.c., asked

7

whether he had ever been convicted of a felony.  Dr. Carlson claims that he ignored the certification language on page two, despite the dealer's advice.  If so, that is not inconsistent with the government's claim.  If he knowingly answered the indictment question falsely, then ignoring the certification language could explain why he didn't reconsider his answer.

On the other hand, there is evidence that despite the attention he seemed to give the form, he was careless: the improper abbreviation of Colorado Springs, the bizarrely wrong dating of the form, blowing off the certification language "which I had read in the past."  More importantly, this was not the surreptitious purchase of a firearm by someone with a motive to evade laws regulating the purchase of a firearm.  Federal pretrial supervision officers had told him that their rules did not impose any restriction on his having firearms.  He had given his sons-in-law shotguns for Christmas, consistent with the family's interest in hunting.  The sons-in-law could have picked up the guns, and completed the necessary forms, themselves.  It doesn't make sense that Dr. Carlson would knowingly try to deceive a firearms dealer in the circumstances, especially when the owner of the firearms dealership was a business and social acquaintance.  It doesn't make sense that Dr. Carlson would knowingly make a false statement on a federal form and then stand by when the dealer sent it to the CBI for a background check.  Or that, if he knew that the form contained a false statement, he would appeal the denial.  He admitted that the first thing that came to mind when his application was denied was that it had something to do with his indictment, but he proceeded with his appeal anyway.

It is the government's burden to prove the elements of the offense beyond a reasonable doubt.  It is certainly possible that, as idiotic as it would have been, Dr. Carlson knowingly falsified the ATF Form 4473.  It is possible that he thought he could get away with it.  People do very foolish things, and that explains a great deal of what we see in criminal court.  He certainly

acted deliberately when he chose not to read or re-read the certification language on the top of page two. Had he done so, it might have opened his eyes to the importance of Question 11 and caused him to reread his answer to Question 11.b. But at bottom it doesn't make sense that he would <u>intentionally</u> submit a form with a false statement in these circumstances. It doesn't make sense that he would <u>deliberately</u> close his eyes to the importance of answering questions on a federal firearms form accurately. I must admit that there is a great deal about this case that doesn't' make sense, on both sides. But, in the end, I am not convinced beyond a reasonable doubt that Dr. Carlson's answer to Question 11.b. was not the result of negligence and carelessness. Accordingly, I cannot find him to be guilty.

## ORDER

The Court finds the defendant, Eric William Carlson, not guilty. Judgment will enter dismissing this case.

DATED this 3rd day of August, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge